UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VIRGIN PULSE INC.,

        Plaintiff,

    v.                                 Case No. 20-C-1691

SCHNEIDER ENTERPRISE RESOURCES LLC,

        Defendant.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

---

On November 10, 2020, Plaintiff Virgin Pulse Inc. (VP) brought this action against Defendant Schneider Enterprise Resources LLC (Schneider), alleging breach of contract and breach of the implied duty of good faith and fair dealing. VP's claims arise out of a Wellness Administration Contract executed by the parties that became effective on April 1, 2019. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Before the Court is VP's motion for partial summary judgment and Schneider's cross motion for summary judgment. For the following reasons, VP's motion will be granted and Schneider's motion will be denied.

## BACKGROUND

VP is a Delaware corporation with its principal place of business in Providence, Rhode Island. VP is in the business of administering wellness programs for employers and their members and provides digital platforms for wellness services. Schneider is a Wisconsin limited liability company whose sole member is Schneider National Leasing, Inc., a Nevada corporation with its principal place of business in Green Bay, Wisconsin. Dkt. No. 48. In April 2019, Schneider entered into a Wellness Administration Contract (the Contract) with VP. The Contract was to run

for a period of three years, from April 1, 2019, to March 31, 2022, with earlier termination conditioned upon notice of default and an opportunity to cure. Section 4.01 of the Contract states, "If either party defaults in the performance of any of its duties or obligations under this Contract, which default is not cured within twenty-one (21) days after written notice thereof is given to the defaulting party by the non-defaulting party specifying the default, then the non-defaulting party may, immediately terminate this Contract." Dkt. No. 24-1 at 11. Section 4.18 of the Contract provides that such notice "shall be in writing and sent to the parties at the addresses set forth below by any means that requires an acknowledgement of receipt by the receiving party." *Id.* at 15. Under the Contract, notice was to be sent to VP's General Counsel, Kim Stephan. *Id.*

The implementation and administration of the Contract did not proceed smoothly. VP's Senior Client Success Manager, Jamie Weise, testified that VP "didn't have the capabilities for some things that [Schneider] was asking for" during the implementation process. Def.'s Proposed Findings of Fact (DPFOF) ¶ 20, Dkt. No. 32; Dkt. No. 31-20 at 8. Schneider also experienced various difficulties with VP's administration of the wellness program, including award points being erroneously withheld or rewarded to participants, employee paychecks being impacted, and online scheduling errors. DPFOF ¶¶ 22–24. As a result of Schneider's ongoing issues, VP designated Schneider as a "Code Red" client. *Id.* at ¶ 32. According to Wade Linkert, VP's Strategic Director of Client Success, the "Code Red" designation indicated that the relationship was "at risk," and those clients who receive the status "can get preferential treatment" in the form of quicker turnaround times. Dkt. No. 31-17 at 23.

On December 16, 2019, representatives from VP and Schneider met in Green Bay. DPFOF ¶ 40. Prior to the meeting, Schneider's Benefits Director, Teresa Dax, emailed VP to set an agenda and to provide relevant questions that needed answering at the meeting. *Id.* at ¶ 37. Dax described the objectives of the meeting as helping Schneider understand whether what it

2

"received from [Virgin Pulse] is your best foot forward" and having an "open, honest conversation" about whether Schneider fit within VP's model. *Id.* at ¶ 38. During the meeting, VP presented proposed program enhancements, and the parties left the meeting with a plan to reconvene in January 2020. *Id.* at ¶¶ 41–44.

Despite the plans for further dialogue, Schneider began searching for a new wellness vendor in January 2020. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 40, Dkt. No. 25. Schneider's search was spurred by the desire to have a "backup" provider in case it felt VP could not deliver on the Contract, although this search was only a "contingency plan" through February 2020. *Id.* at ¶¶ 41–42. The parties met again on January 28, 2020, and January 30, 2020. At those meetings, VP presented plans for a program refresh and listened to Schneider's general feedback regarding the program. DPFOF ¶¶ 47, 49. Schneider was not satisfied, however, and in March 2020, elected to transition its program from VP to Optum Rally. *Id.* at ¶ 55; PPFOF ¶ 43.

On March 11, 2020, Teresa Dax informed VP's Vice President of Client Success, Dawn Zerneke, that she would be sending a letter detailing Schneider's decision to terminate the Contract. DPFOF ¶ 56. Despite the Contract specifying that such a notice should be given to VP's General Counsel, Kim Stephan, Schneider addressed the letter to Zerneke. *Id.* at ¶ 57. After receiving the letter via email, Zerneke responded the next day by confirming that she had received the letter and that she was "having [VP's] legal team review." *Id.* at ¶ 59. Zerneke emailed the letter to Stephan, the individual to whom notice was to be directed in the first instance. *Id.* at ¶ 60. The letter indicated that Schneider intended to terminate its contract with VP effective June 30, 2020, and cited VP's inability to "execute Schneider's wellness strategy and agreed upon processes which has impacted our member experience and creditability with our associates." Dkt. No. 24-5. It also asked VP to accomplish various action items to ensure a "smooth transition." *Id.*

On March 25, 2020, Stephan sent a letter to Schneider on VP's behalf. Dkt. No. 24-7. She stated that VP rejected Schneider's attempt to terminate the Contract and asserted that Schneider remained fully obligated under the terms of the Contract. *Id.* She indicated that "Schneider does not have the right to terminate for convenience, and [VP] [is] not willing to agree to mutual termination of the Agreement." *Id.* Schneider did not respond to the letter, and Stephan sent another letter on April 13, 2020. DPFOF ¶ 66. This time, Stephan informed Schneider that it had "blatantly disregarded its contractual obligations," and that VP had no choice but to consider Schneider in default of its obligations under the Contract. Dkt. No. 24-8 at 1. Pursuant to Section 4.01 of the Contract, VP provided written notice of Schneider's default and indicated that it had 21 days to cure the default by either (1) rescinding its March 11, 2020, correspondence and affirming its contractual obligations under the Contract or (2) paying VP an amount equal to $788,025, which represented the remaining amount of subscription fees due. *Id.* at 2. The letter noted that, should Schneider refuse to cure its default within the allotted time period, VP would pursue all available legal remedies. *Id.*

Schneider responded with a letter dated March 29, 2022, that VP received on April 14, 2020. Dkt. No. 24-9; PPFOF ¶ 72. Schneider asserted that its March 11, 2020, letter was not terminating the Contract for convenience but rather for cause pursuant to Section 4.01 of the Contract. Dkt. No. 24-9. According to Schneider, VP defaulted in its performance and failed to cure service, process, and system issues. *Id.* Schneider indicated that VP should not be surprised by such an assertion because after it received the March 11, 2020, letter, "the Virgin Pulse team joined a meeting with Schneider on March 18 at which the Virgin Pulse presented a detailed contract termination and transition plan." *Id.* VP disputes the nature of the March 18 meeting. *See* Resp. to DPFOF ¶ 61, Dkt. No. 44.

On May 5, 2020, VP's counsel sent a letter to Schneider's counsel, stating that, as of May 4, 2020, Schneider had not timely cured its default as required by the Contract. Dkt. No. 24-10 at 1. It informed Schneider of the deficiencies in its March 11, 2020, notice, namely, Schneider's failure to give specific reasons explaining why VP was in default and allow VP a 21-day cure period. *Id.* at 2. VP's counsel also stated that Schneider had failed to direct the letter to Stephan, the individual to whom notice must be sent under Section 4.18 of the Contract. *Id.* The letter asserted that Schneider was in breach of its contractual obligations and that VP would avail itself of all rights and remedies available to it. *Id.* at 3. VP initiated this lawsuit on November 10, 2020.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the nonmoving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

VP moved for summary judgment on Schneider's liability under Count I of VP's complaint and dismissal of Schneider's affirmative defense of waiver. Dkt. No. 22. Schneider's cross-motion seeks summary judgment on both counts of VP's complaint and asks the Court to dismiss the case with prejudice. Dkt. No. 29. The Court will address each motion in turn applying Wisconsin law. *See Employers Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 923 (7th Cir. 2006) (where neither party raised conflict of law issue in diversity action, law of forum state governed).

### A. VP's Motion for Partial Summary Judgment

#### 1. Waiver

The Wisconsin Supreme Court has defined waiver as the "voluntary and intentional relinquishment of a known right." *Milas v. Labor Ass'n of Wis., Inc.*, 214 Wis. 2d 1, 9, 571 N.W.2d 656 (1997). Intent to relinquish the right is an essential element of waiver, but "[i]t is not necessary, however, to prove that the party had an actual intent to waive." *Id.* at 9–10. Instead, the intent to waive "may be inferred as a matter of law from the conduct of the parties." *Id.* at 10 (quoting *Nelson v. Caddo–Texas Oil Lands Co.*, 176 Wis. 327, 329, 186 N.W. 155 (1922) (internal quotation marks omitted)). "Ordinarily questions of waiver are questions of fact for the jury," but where the facts are undisputed, the question of waiver is one of law. *Thompson v. Vill. of Hales Corners*, 115 Wis. 2d 289, 319, 340 N.W.2d 705 (1983).

Schneider argues that two lines of evidence support its affirmative defense of waiver. First, it asserts that VP waived the Contract's formal notice and cure requirements through its conduct from December 2019 to March 2020. Dkt. No. 30 at 26. During this time frame, Schneider asserts that it brought numerous concerns to VP's attention and that VP never indicated that it should send formal notice of its complaints to Stephan. *Id.* Instead, VP set up three meetings with Schneider, none of which Stephan attended, where VP presented proposed solutions to assuage Schneider's

6

concerns. DPFOF ¶¶ 40, 47, 49, 82. Schneider calls this a "textbook example of intentionally relinquishing a known right." Dkt. No. 30 at 27.

This argument conflates Sections 4.01 and 4.02 of the Contract. Section 4.02 provides that all formal complaints regarding VP's services "shall be in writing and provided to VP in accordance with Section 4.18" and that, upon receiving such a complaint, VP would develop and present a plan to Schneider to rectify the issues. Section 4.02 is separate from the termination provision of Section 4.01. Dkt. No. 24-1 at 11. VP's acquiescence to receiving complaints about its service through less formal channels under Section 4.02 of the Contract does not demonstrate that it waived its right to written notice of default and a period to cure under Section 4.01 of the Contract. At best, it may demonstrate waiver of Section 4.02 but that is wholly irrelevant to whether VP waived the requirements of Section 4.01.

Second, Schneider argues that VP waived the Contract's termination requirements when it "waited over a month to provide a substantive response" to Schneider's March 11, 2020, letter. Dkt. No. 30 at 27. But no reasonable jury could conclude that VP waived its right to the formal notice and cure requirements under Section 4.01 of the Contract based on this supposed delay. After receiving Schneider's termination letter, VP informed Schneider that its legal team would review the letter and respond shortly. DPFOF ¶ 59. Two weeks later, in a March 25, 2020, letter, VP informed Schneider that it rejected Schneider's attempt to unilaterally terminate the Contract. *Id.* at ¶ 64; Dkt. No. 24-7. VP never received a response to the letter, so on April 13, 2020, Stephan sent *another* letter, this time declaring that Schneider had "blatantly disregarded its contractual obligations." DPFOF ¶ 66; Dkt. No. 24-8 at 1. The letter also provided formal written notice of Schneider's default under the Contract and provided a 21-day period for Schneider to cure the default. Dkt. No. 24-8 at 2.

In truth, it was Schneider who waited over a month to provide any sort of substantive written response. PPFOF ¶¶ 71–72. In a letter addressed to Wade Linkert and dated March 29, 2020, though not received by VP until April 14, 2020, Schneider asserted that its March 11, 2020, letter sought to terminate the Contract pursuant to Section 4.01 based on VP's default in its performance of contractual duties. Dkt. No. 24-9. Schneider maintained that the termination should not have come as a surprise to VP because representatives from VP and Schneider met on March 18, 2020, to discuss a transition plan. *Id.* A few weeks later, on May 5, 2020, VP's counsel sent a letter to Schneider's counsel, detailing Schneider's failure to provide an effective termination notice under Section 4.01 and cure its default within the period provided by VP's April 13, 2020, letter. Dkt. No. 24-10 at 1–2.

None of these facts support Schneider's contention that VP waived its rights under Section 4.01 of the Contract. Indeed, VP explicitly rejected Schneider's attempt to terminate the contract; informed Schneider that it had breached its contractual obligations and declared it to be in default pursuant to Section 4.01; and explained, in detail, the reasons Schneider's termination notice was ineffective. The mere fact that these exchanges took some time to accomplish, which is not uncommon where the communication takes place via carefully written legal correspondence, is not sufficient for a jury to conclude that VP intentionally waived its right to Section 4.01's requirements. The same is true of Schneider's repeated assertions that VP did not inform Schneider of the issues with its termination notice. Schneider takes issue with the fact that VP employees, such as Zerneke and Stephan, did not immediately bring to Schneider's attention that its termination notice did not comply with Section 4.01. Dkt. No. 30 at 27–28. But VP was not required to guide Schneider through the termination process; it was Schneider's responsibility to understand its obligations under the Contract. The Court concludes that Schneider has not adduced sufficient evidence for a reasonable jury to conclude that VP *voluntarily and intentionally*

8

relinquished its rights under Section 4.01 of the Contract. *See Milas*, 214 Wis. 2d at 9–10. Schneider's affirmative defense of waiver is therefore dismissed.

### 2. Breach of Contract

In Wisconsin, a breach of contract claim has three elements: "(1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." *Brew City Redevelopment Grp., LLC v. The Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582 (citing *Nw. Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200 (1971)). There is no doubt that the first element has been met—the parties agree that the Contract is enforceable between them. PPFOF ¶ 76. The dispute, of course, is whether Schneider fulfilled its obligations with respect to Section 4.01 of the Contract. While Schneider concedes that it did not strictly comply with Section 4.01, it argues that it "substantially complied" with the Contract. Dkt. No. 30 at 15.

VP asserts that the doctrine of substantial compliance, perhaps better termed substantial performance in Wisconsin, is an affirmative defense that must be raised in the answer. Dkt. No. 43 at 7. It claims that Schneider waived the defense because Schneider failed to raise it in its answer. *See Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020) ("An affirmative defense is waived when it has been knowingly and intelligently relinquished and forfeited when the defendant has failed to preserve the defense by pleading it."). Although one Wisconsin court has alluded to the possibility of the doctrine of substantial performance being an affirmative defense, *see Klug & Smith Co. v. Sommer*, 83 Wis. 2d 378, 387, 265 N.W.2d 269 (1978), no Wisconsin court has squarely described it as such. Even if the Court concluded that Schneider was required to raise the affirmative defense in its answer, VP is not prejudiced by Schneider's failure to do so. *See Burton*, 961 F.3d at 966. Although Schneider has raised the substantial performance defense at the eleventh hour, it is a straightforward defense that does not require any additional discovery to

9

refute it; after all, the only issue here is whether Schneider complied with the notice and cure requirements of Section 4.01, not whether Schneider achieved some broader level of performance of the Contract. The Court concludes Schneider has not waived its substantial performance defense.

Schneider's defense of substantial compliance, assuming it is even applicable to such a contract, nevertheless fails. Schneider's performance obligations in this situation are plainly stated. Section 4.01 provides the unambiguous steps the parties must take if they wish to terminate the agreement and failure to follow these steps is not the type of "minor imperfection" that the substantial performance doctrine seeks to cure. *See Domanik Sales Co. v. Paulaner-North America Corp.*, 2001 WI App 31, ¶ 10, 241 Wis. 2d 48, 622 N.W.2d 769. Furthermore, Schneider's purported use of the doctrine as a shield appears to turn its typical use on its head. Whereas the doctrine is typically employed by a plaintiff-contractor seeking to collect on a contract that it has substantially performed, *see Hugo Bramschreiber Asphalt Co., Inc. v. Midwest Amusement Park, LLC*, 2006 WI App 223, ¶ 9, 296 Wis. 2d 937, 724 N.W.2d 274, Schneider seeks to employ the doctrine as a shield to prevent it from having to comply with the terms of the Contract that govern termination.

Schneider argues that it was not required to give VP an opportunity to cure because the breach was "incurable." Dkt. No. 30 at 16. An incurable breach is "either one that the contract provides no opportunity to cure or one that cannot logically be cured." *Manpower Inc. v. Mason*, 377 F. Supp. 2d 672, 677 (E.D. Wis. 2005). Schneider asserts that there are genuine issues of material fact as to whether VP could cure its supposed breach. But Schneider has not adduced evidence from which a reasonable jury could conclude that VP's supposed breach was logically uncurable. It cites the testimony of VP's Senior Client Success Manager that, at the beginning of the parties' relationship, VP did not have certain capabilities that Schneider was asking for.

10

DPFOF ¶ 20. It also points to the difficulties VP experienced in implementing and operating the audit system called for by Section 4.03 of the Contract. *Id.* ¶¶ 27–29.

Neither example demonstrates that VP's supposed breach was logically incurable. The term "logically incurable" implies that there is *nothing* that could be done to cure the breach. The mere fact that VP did not initially have the capabilities to meet Schneider's needs does not necessarily mean that it could *never* develop those capabilities, and the fact that VP may have experienced struggles in implementing the audit program does not mean that it would *never* be able to resolve the issues. Schneider has not presented any evidence for a reasonable jury to conclude that VP would never be able to resolve these issues, and therefore, its argument fails.

Schneider argues that it nevertheless allowed VP extended periods of time to cure its defaults. It asserts that it provided VP with an opportunity to cure starting in December 2019 and provided a further opportunity to cure through June 30, 2020. Dkt. No. 30 at 19, 22. Schneider maintains that Teresa Dax's December 3, 2019, email to VP, which detailed some of Schneider's concerns that were to be discussed at an upcoming meeting, served as notice to VP to cure its defaults. *Id.* at 20. It further argues that VP treated the email as a notice of default by sending representatives to meet with Schneider in Green Bay to respond to Schneider's concerns. *Id.*

But the email did not comply with the notice provisions of Section 4.01 or 4.18 of the Contract because it was not sent to VP's General Counsel, Kim Stephan. In addition, Dax did not purport to declare that VP was in default of its obligations or put VP on notice that the email triggered the 21-day period to cure. The email merely outlined an agenda and discussion items for a meeting between the parties. Testimony from Schneider's Federal Rule of Civil Procedure 30(b)(6) representative indicates that Schneider had no intention of terminating the Contract in December 2019 and instead sought to work through the issues it had been experiencing. Dkt. No. 24-12 at 39:17–21. The mere fact that VP sent representatives to address Schneider's concerns

11

does not demonstrate that VP intended to treat the email as a notice of termination under Section 4.01 of the Contract. By sending representatives to address its customer's concerns, VP responded in the way any rational business would. No reasonable jury could conclude that Dax's email served as a notice of default or triggered Section 4.01's 21-day period to cure.

Schneider also argues that it provided VP with a generous cure period of nearly 90 days. It maintains that the March 11, 2020, termination letter made clear that the termination would not be effective until June 30, 2020. Dkt. No. 24-5. Schneider asserts that, as a result, VP had until June 30, 2020, to cure its default and that genuine questions of material fact remain regarding the opportunity to cure provided by Schneider. Dkt. No. 30 at 23. Schneider's argument is undercut by its own conduct and testimony, however. Schneider's March 11, 2020, termination letter never mentioned VP's right to cure its default within 21 days. *See* Dkt. No. 24-5. It instead asked VP to take certain actions to ensure a "smooth transition" to Schneider's new provider, underscoring the fact that Schneider had already made up its mind to terminate the contract and transition to a new provider, regardless of whether VP cured its default. *Id.*

In addition, testimony from Schneider employees indicates that Schneider did not provide VP with the 21-day cure period as required by the Contract. When asked at her deposition what error Schneider made, Schneider's Senior Manager for Purchasing, Francine Potts, testified that Schneider "did not give them the opportunity to cure" and that it "did not give them the notice, a written notice on -- to cure the issues." Dkt. No. 24-11 at 90:9–15. When asked whether Schneider should have given VP 21 days to cure any default before terminating the contract, Potts responded, "Yes." *Id.* at 90:22–25. Dax was also asked whether she would have directed Potts to draft the termination letter differently based on what she had learned, and she responded, "Honestly I think I would have consulted with . . . our legal counsel because we would have realized that we didn't offer that formal 21 days to cure." Dkt. No. 24-12 at 71:7–13. Based on the foregoing, it is clear

12

that Schneider did not offer VP a 21-day period to cure its defaults as required by Section 4.01 of the Contract, and Schneider has not presented evidence to the contrary that would allow a reasonable jury to conclude that it did.

This leaves only the determination of whether Schneider breached the Contract. Recall that a breach of contract claim in Wisconsin has three elements: (1) a contract between the plaintiff and the defendant, (2) failure of the defendant to do what it undertook to do, and (3) damages. *See Brew City*, 289 Wis. 2d 795, ¶ 11. Again, there is no dispute that a contract exists here. The only question is whether Schneider failed to meet its obligations under the Contract with respect to its termination.

Here, Schneider's March 11, 2020, termination letter breached Section 4.01 of the Contract. The purported termination notice did not meet the notice requirements of Sections 4.01 and 4.18, which mandate that any notice of termination should be sent to VP's General Counsel, Kim Stephan. It is undisputed that Schneider sent the communication to Dawn Zerneke, not Stephan. Dkt. No. 24-5. Schneider's letter also did not provide VP with the required 21-day period to cure. Instead, the letter asked VP to take certain actions to ensure a smooth transition to Schneider's new provider. *Id.* Schneider, through its Rule 30(b)(6) representative, and its employees, admitted as much. *See* Dkt. No. 24-11 at 90:9–15; Dkt. No. 24-12 at 71:7–13. There is no doubt that VP suffered damages as a result of the breach. But for Schneider's ineffective termination, VP would have been entitled to additional fees under the Contract. There is no genuine issue of material fact with respect to these issues, and the Court concludes that Schneider breached its contractual obligations with respect to Section 4.01 of the Contract. Therefore, VP's motion for partial summary judgment will be granted.

13

**B. Schneider's Cross-Motion for Summary Judgment**

Schneider asserts that VP breached Section 4.01 of the Contract. Dkt. No. 30 at 28–29. Although Schneider concedes that VP's notice was proper, it argues that the methods to cure proposed by VP were "punitive." *Id.* The punitive nature of the proposed methods to cure, Schneider claims, justified its refusal to perform, such that VP breached the Contract when it unilaterally terminated it. *Id.* at 30. VP's April 13, 2020, letter informed Schneider that VP considered Schneider to be in default and that it had 21 days from the date of the letter to cure. Dkt. No. 24-8 at 2. The letter outlined two ways in which Schneider could cure its default: (1) rescind its March 11, 2020, correspondence and reaffirm its contractual obligations under the Contract or (2) pay VP $788,025, the remaining amount of subscription fees due under the Contract. *Id.* The letter noted that, should Schneider fail to cure its default by May 4, 2020, VP would pursue all available legal remedies. *Id.*

Schneider contends that the first option would "result in Schneider waiving any breaches not only in the past, but in the future as well." Dkt. No. 30 at 30. But it is difficult to see how this could be so. Rescinding the termination letter and reaffirming its contractual obligations would not absolve VP of any significant past performance issues. The proposed method to cure is better read as requiring Schneider to rescind its ineffective cure letter and to adhere to the terms of the Contract. In other words, nothing prevented Schneider from rescinding the March 11, 2020, termination letter, acknowledging that it was bound by the terms of the Contract, and resending a termination letter in compliance with Section 4.01. It is even more difficult to see how reaffirming its contractual obligations could have waived future breaches of the Contract. Schneider's view appears to be that, by "reaffirming its contractual obligations," it would somehow agree to see out the remainder of the Contract, regardless of VP's performance. But nowhere in any of the

correspondence before the Court does VP explicitly make that statement or imply that this would be the case. In sum, there was nothing punitive about VP's first request.

Schneider argues that the second option, paying the remaining subscription fees due on the Contract, was punitive because it required Schneider to pay "all revenues, not just profits, for the remainder of the Contract." *Id.* But even assuming Schneider's position on this issue is correct, it ultimately makes no difference. The Contract defines neither "default" nor "cure." *See* Dkt. No. 24-1 at 4–5. Instead, the Contract merely requires that, under Section 4.01, the defaulting party be given 21 days to cure the alleged default. *Id.* at 11. The first option was not onerous in any sense; it merely required Schneider to rescind its ineffective termination letter and affirm that it was bound by the terms of the Contract. There was nothing preventing Schneider from sending an effective termination notice shortly thereafter.

Schneider asserts that a proper cure for its failure to provide proper notice "would have been to demand that Schneider provide such notice in accordance with the Contract's terms." Dkt. No. 30 at 30 n.5. Such a cure likely would have been acceptable under Wisconsin law. *See Volvo Trucks N. Am. v. State of Wis. Dep't of Transp.*, 2010 WI 15, ¶ 48, 323 Wis. 2d 294, 779 N.W.2d 423 ("A reasonable interpretation of . . . 'cured' means the breaching party is to stop the offending conduct and to substantially perform the contract. No other interpretation of the word 'cured' is more reasonable."); *accord Taizhou Yuanda Inv. Grp., Ltd. v. Z Outdoor Living, LLC*, 522 F. Supp. 3d 476, 489 (W.D. Wis. 2021). But despite its recognition that such a cure would have been sufficient, Schneider did not act on it because VP "never made such a demand." Dkt. No. 30 at 30 n.5. The Court again rejects Schneider's suggestion that VP was responsible for telling it what to do and when to do it in order to comply with its contractual obligations. If Schneider was acutely aware of the action it could have taken to cure its default, it should have done so without hesitation.

15

In sum, Schneider has not adduced evidence sufficient for a reasonable jury to conclude that VP breached Section 4.01 of the Contract. To the contrary, the evidence demonstrates that VP provided sufficient notice and gave Schneider 21 days in which to cure its default. Dkt. No. 24-8. At the very least, the first cure offered by VP was reasonable, and Schneider admits that it could have taken steps to cure its default but that it chose not to do so. Dkt. No. 30 at 30 n.5. For these reasons, Schneider's motion for summary judgment will be denied.

## CONCLUSION

For the foregoing reasons, VP's motion for partial summary judgment (Dkt. No. 22) is **GRANTED** and Schneider's cross-motion for summary judgment (Dkt. No. 29) is **DENIED**. The Court concludes that Schneider has breached its contractual obligations under the Contract and that VP is entitled to damages in an amount to be determined at trial, along with VP's claim for breach of the implied duty of good faith and fair dealing. The Clerk is directed to set this matter for a telephone scheduling conference to discuss further proceedings.

**SO ORDERED** at Green Bay, Wisconsin this 19th day of September, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge